AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico
Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
A 2012 BLUE NISSAN JUKE; VIN: JN8AF5MR7CT102878

Case No. 24-MR-1556

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated by reference herein

located in the ________ District of New Mexico, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, attached hereto and incorporated by reference herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(3) | Drug user in possession of ammunition |

The application is based on these facts:
See attached affidavit of Special Agent Franklin Mosca, attached hereto and incorporated by reference herein. This application was reviewed and approved by Special Assistant United States Attorney Jonathan Gardner.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Franklin Mosca, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically sworn and electronically signed *(specify reliable electronic means)*.

Date: August 22, 2024

*Judge's signature*

City and state: Albuquerque, NM

Kirtan Khalsa United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| IN THE MATTER OF THE SEARCH OF: A 2012 BLUE NISSAN JUKE; VIN: JN8AF5MR7CT102878 | Case No. 24-MR-1556 |
|---|---|

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Franklin Mosca, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a 2012 Blue Nissan Juke, VIN JN8AF5MR7CT102878, registered to Courtney Sparks at 18565 US 84 285, Espanola, New Mexico 87532, hereinafter the "**SUBJECT VEHICLE**," further described in Attachment A, for the things described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since 2023. I have been assigned to the Albuquerque Division since 2024, where I have conducted investigations into cyberstalking and imminent violent threats involving an interstate nexus. My duties include, but are not limited to, the investigation and enforcement of criminal violations related to cyberstalking and threats made via interstate communication. I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. § 922(g)(3) Unlawful User or Addict of Controlled Substance in Possession of a Firearm or Ammunition. Prior to switching to the Special Agent role in 2023, I previously worked for the FBI as an Intelligence Analyst from 2015 until 2023. From 2019 until 2023, I supported investigations regarding violent criminal activity committed by individuals inspired by domestic violent extremist ideologies, who often demonstrated behaviors indicating a mobilization to violence.

3. I am assigned to the FBI's investigation of Courtney Leigh Sparks (hereinafter "SPARKS"), including her possession of a firearm and ammunition while being a habitual unlawful user of a controlled substance.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

5. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary for the limited purpose of establishing probable cause to conduct a search of and for the items described in Attachments A and B for evidence, contraband, and/or instrumentalities of the criminal conduct described herein. Additionally, unless otherwise indicated, wherever in this Affidavit I assert that an individual made a statement, that statement is described in substance herein and is not intended to be a verbatim recitation of such statement. Furthermore, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part. The following is true to the best of my knowledge and belief.

## FEDERAL CHARGES RELEVANT TO THIS AFFIDAVIT

6. Based on the facts set forth in this affidavit, I believe there is probable cause to believe that SPARKS has committed a violation of 18 U.S.C. § 922(g)(3). Section 922(g)(3) provides it shall be unlawful for any person who is "an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))…to…possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

**PROBABLE CAUSE**

7. On May 22, 2024, the Rio Rancho Police Department (RRPD) informed me of recent interactions by the RRPD Crisis Intervention Team (CIT) with and regarding SPARKS, which concerned SPARKS' desire to create a "Molotov cocktail," her possession of weapons and ongoing drug user, and her intent to harm others with explosives. RRPD reports documented statements from several witnesses with knowledge of SPARKS, identified in this affidavit as WITNESS 1, WITNESS 2 and WITNESS 3.[1] At various times, WITNESSES 1-3 resided with SPARKS at a residence in Rio Rancho, New Mexico.

8. I reviewed a RRPD Offense/Incident Report, which documented the RRPD CIT's interaction with SPARKS on May 14, 2024, at the address in Rio Rancho. The minor teenage son (MINOR) of SPARKS answered the door when the CIT arrived and mentioned that the MINOR had cut fireworks. SPARKS arrived several minutes later and invited officers into the residence, where officers observed drug paraphernalia.

9. Approximately one week later, RRPD CIT spoke with WITNESS 1 about the incident on May 14, 2024, at the Rio Rancho address. In addition to the May 14, 2024 incident, WITNESS 1 told RRPD CIT that on April 22, 2024, SPARKS had engaged in a physical confrontation with another individual, and this had upset SPARKS. SPARKS told WITNESS 1 and MINOR to grab fireworks because SPARKS needed gunpowder for a bomb. SPARKS, WITNESS 1, and MINOR then went into SPARKS' bathroom and began cutting open fireworks and pouring out gunpowder. Within a few minutes, police arrived in response to the physical confrontation and WITNESS 1 stopped helping.

10. RRPD CIT also spoke with WITNESS 2 about the incident on May 14, 2024. WITNESS 2 observed the dismantling of fireworks and expressed concern with SPARKS'

1 The full identities of WITNESSES 1-3 are known to law enforcement but anonymized here to protect the ongoing investigation.

possession of firearms and frequent use of methamphetamine, fentanyl, and marijuana. SPARKS had asked WITNESS 2 for help making a Molotov cocktail to blow up a trailer of someone who owed her money. WITNESS 2 left the residence because of SPARKS' behavior.

11. I reviewed the RRPD report dated April 22, 2024, which documented an assault/battery call for service at the Rio Rancho address. According to the report, RRPD arrived and contacted WITNESS 3, who had recently moved into the address along with SPARKS and SPARKS' adult son (SON). WITNESS 3 told RRPD that SPARKS invited WITNESS 3 and SON to live with her. On the afternoon April 22, 2024, WITNESS 3 found her belongings rummaged through and confronted SPARKS. WITNESS 3 told SPARKS to stay out of WITNESS 3's things. SPARKS began bumping her chest against WITNESS 3's chest, and SPARKS realized WITNESS 3 was pregnant. SPARKS stated, "your face isn't pregnant" and slapped WITNESS 3 in the face. WITNESS 3 showed RRPD a photo taken after the slap showing redness to her cheek. WITNESS 3 did not press charges. SPARKS was not present at the residence during RRPD's response. RRPD attempted to call SPARKS, who hung up on the first attempt and did not answer on the second attempt.

12. On May 29, 2024, I received a photograph from RRPD which was provided to RRPD from WITNESS 2. The photograph is attached below and appears to depict the dismantling of fireworks inside the Rio Rancho residence and was reportedly taken on April 22, 2024.



## FBI INVESTIGATION

A. Interview of Witness 2

13. On May 31, 2024, FBI Special Agent (SA) Aaron Carp and I interviewed WITNESS 2. WITNESS 2 stated s/he initially met SPARKS while they were both residents at an apartment complex. Although the timeframe was not entirely clear, it appears WITNESS 2 has known SPARKS since at least mid-2023. From the time they met, WITNESS 2 had known SPARKS to be an alcoholic and an abuser of other drugs including marijuana,

methamphetamine, and fentanyl AKA "blue." WITNESS 2 directly observed SPARKS' use of these substances. SPARKS purchased a house in Rio Rancho and invited WITNESS 2 to move in. WITNESS 2 moved into the residence with SPARKS and MINOR in December of 2023.

14. WITNESS 2 went on to state that in March 2024, SPARKS picked up a male individual[2] from a rehab facility and SPARKS and the male individual discussed building Molotov cocktails at SPARKS' residence for the purposes of destroying the trailer of a narcotics dealer (NARCOTICS DEALER), who owed money to SPARKS. SPARKS asked WITNESS 2 for advice on how to build Molotov cocktails.

15. After two weeks of discussing building Molotov cocktails, SPARKS purchased two gallons of vodka and told WITNESS 2 that SPARKS was going to go burn down NARCOTICS DEALER's trailer. WITNESS 2 reported SPARKS was on her way to burn down the trailer when she was arrested for driving while intoxicated and the police seized a six-shooter revolver from SPARKS. This information about SPARKS' arrest was later confirmed, as described in more detail below.

16. In approximately April or May 2024, SPARKS' adult son (SON) and another individual (WITNESS 3) moved into SPARKS' residence. During a dispute between SPARKS, SON, and WITNESS 3, SPARKS struck WITNESS 3 in the face. After this incident, SPARKS had WITNESS 1 and MINOR cut open fireworks and pour the gunpowder in a coffee filter to concentrate it. WITNESS 1 told WITNESS 2 that SPARKS' intent was to collect gunpowder from the fireworks to build a device to harm SON and WITNESS 3.

17. WITNESS 2 knew SPARKS to possess a shotgun or rifle. SPARKS showed the rifle or shotgun to homeless people who visited SPARKS.

---

[2] Based on the information from WITNESS 2, as well as the information provided by WITNESS 1 detailed below, I was able to identify this individual as M.D. I confirmed with the United States Marshals Service that M.D. had the prior conviction described by WITNESS 1 and walked away from a rehab facility in Rio Rancho.

B. Interview of Witness 1

18. On June 6, 2024, SA Aaron Carp and I interviewed WITNESS 1. WITNESS 1 stated s/he knew SPARKS since 2022. WITNESS 1 lived with SPARKS at an apartment complex and then at a house in Rio Rancho. WITNESS 2 also lived with SPARKS and WITNESS 1 at the house in Rio Rancho.

19. When SPARKS was arrested for driving while intoxicated in March, SPARKS told WITNESS 1 that SPARKS rented a truck to go throw a Molotov cocktail at the residence of NARCOTICS DEALER, who sold SPARKS methamphetamine. SPARKS was angry with NARCOTICS DEALER because SPARKS had loaned NARCOTICS DEALER money for a vehicle and NARCOTICS DEALER did not pay it back. NARCOTICS DEALER was supposed to pay the debt to SPARKS with methamphetamine or cash but did neither. SPARKS later told NARCOTICS DEALER that SPARKS intended to burn NARCOTICS DEALER's house down.

20. On the night SPARKS "put hands" on WITNESS 3, SPARKS had MINOR cut open fireworks in the bathroom and was attempting to concentrate the gunpowder from the fireworks. SPARKS told WITNESS 1 that SPARKS was "going to set it off when walking out the door."

21. WITNESS 1 stated SPARKS had a .38 revolver that the police took after SPARKS' arrest in March for driving while intoxicated. SPARKS also had a pellet gun and sawed-off shotgun. SPARKS kept the sawed-off shotgun in a hall closet at SPARKS' house in Rio Rancho. WITNESS 1 last saw the shotgun a few days before WITNESS 1 left the Rio Rancho house. The shotgun was cut so it was no longer than the width of WITNESS 1's shoulders.

22. WITNESS 1 did not observe SPARKS' firearms until WITNESS 1 lived with SPARKS in Rio Rancho. WITNESS 1 stated SPARKS abused methamphetamine and

fentanyl during the time SPARKS possessed these weapons. SPARKS kept the revolver and pellet gun in SPARKS's bedroom. SPARKS kept a hatchet under the seat in her car.

23. WITNESS 1 also stated SPARKS used whatever controlled substance she could obtain. WITNESS 1 had observed SPARKS use drugs regularly since 2022, including fentanyl and methamphetamine. SPARKS had mushrooms at one point. SPARKS discontinued taking prescribed medication, but possibly used a strong tranquilizer and psychotic medications.

24. WITNESS 1 stated that in January or February 2024, SPARKS picked up M.D. from a rehab facility in Rio Rancho. M.D. was not supposed to leave the facility and had previously been arrested for bank robbery and was incarcerated in Hobbs, New Mexico. SPARKS sent narcotics to M.D. while s/he was in prison through couriers but SPARKS never brought it to M.D. herself.

C. Interview of Witness 4

25. On June 12, 2024, Special Agents from the FBI Phoenix Field Office interviewed WITNESS 4[3], a relative of SPARKS. WITNESS 4 knew SPARKS to possesses the knowledge to construct an explosive device. The father of SPARKS kept a muzzleloader rifle and cannisters of black powder around. SPARKS is familiar with the uses of black powder and would know how to pair PVC, black powder, and end fittings to construct a device. On one occasion, SPARKS built a smoke bomb and threw it through a window of a residence of someone known by WITNESS 4. WITNESS 4 knows SPARKS to possess firearms including a .22 caliber handgun and a snub nose .38 special. WITNESS 4 stated that SPARKS would likely have ammunition for those firearms. SPARKS' father gave SPARKS a shotgun as a wedding gift along with a box of shotgun shells.

[3] The full identity of WITNESS 4 is known to law enforcement but anonymized here to protect the ongoing investigation.

26. WITNESS 4 has been aware of SPARKS' substance abuse for more than twenty years. SPARKS and WITNESS 4 used to use heroin together. SPARKS' substance abuse began with Percocet but then progressed to heroin and methamphetamine. SPARKS' mental health status has declined recently due to SPARKS' boyfriend dying in a fire. SPARKS was awarded a settlement due to a wrongful death suit involving her boyfriend. Using some of the money, SPARKS would go to a homeless shelter in Albuquerque located on the corner of Zuni and Louisiana to pick up strangers, bring them to her house, and do drugs. WITNESS 4 recalled an incident when SPARKS called WITNESS 4 and stated that a Game Warden in Farmington, NM had found SPARKS walking around naked. SPARKS makes threats all the time when someone angers SPARKS.

27. WITNESS 4 showed Special Agents text messages[4] from SPARKS. A photograph of messages sent from SPARKS to WITNESS 4 on June 4, 2024, depicting a white crystal-like substance in wrapping is attached below:

---

4 WITNESS 4 also showed the Special Agents text messages of photographs SPARKS took of herself sent from phone number +15052490295.




D. <u>Interview of WITNESS 3</u>

28. On June 13, 2024, Special Agents from the FBI Phoenix Field Office interviewed WITNESS 3. WITNESS 3 told agents that WITNESS 3, SON, and the child of WITNESS 3 lived with SPARKS for approximately one month. On April 22, 2024, SPARKS went through the room of WITNESS 3 and SON. WITNESS 3 asked SPARKS to leave the room, to which SPARKS replied it was SPARKS' house and SPARKS could do whatever SPARKS wanted. WITNESS 3 and SPARKS engaged in a verbal altercation when SPARKS

struck WITNESS 3 on the face. WITNESS 3 called the non-emergency police number, reported the incident, and police responded. After the incident, WITNESS 3 obtained a restraining order against SPARKS.

29. On a different occasion, SPARKS told SON that SPARKS was setting fire to WITNESS 3's room. Any time people were heard outside of the residence, SPARKS would get a shotgun and put it by the front door. She would then tell MINOR "he knew what to do." SPARKS yelled at people who came into the residence and threatened to set their house on fire.

30. SPARKS told WITNESS 3 that SPARKS carried weapons. WITNESS 3 only saw a shotgun. SPARKS blamed SON for stealing SPARKS' drugs. WITNESS 3 knew SPARKS used methamphetamine and "weed." SPARKS also had detox bottles for when SPARKS needed to complete drug testing.

**ADDITIONAL CORROBORATION OF UNLAWFUL NARCOTICS USE**

A. 2015 Los Lunas Police Department (LLPD) arrest of SPARKS

31. I reviewed a LLPD case report from May 28, 2015. According to the report, LLPS arrested SPARKS for driving while under the influence and possession of a controlled substance. The LLPD Officer (LLPD OFFICER) decided to stop SPARKS' vehicle after running the license plate though a mobile data terminal and discovering the vehicle registration was expired. Before the LLPD Officer could turn off the emergency lights to conduct a traffic stop, the vehicle made a turn and almost hit three pedestrians – who had the right of way – crossing the street in a cross walk. SPARKS' vehicle had to swerve to avoid hitting the pedestrians.

32. LLPD OFFICER conducted a field sobriety exam and identified there was probable cause to arrest SPARKS for driving while under the influence of alcohol or drugs. LLPD OFFICER then escorted SPARKS to LLPD OFFICER's vehicle, performed a search

incident to arrest finding no weapons on SPARKS, and then visually checked the back seat of SPARKS' vehicle finding no weapons or contraband. LLPD OFFICER transported SPARKS to the State Police Department in Los Lunas, and while enroute noticed one of SPARKS' hands appeared to be out of the hand cuff. LLPD OFFICER asked SPARKS if she had slipped out of her cuff and SPARKS responded that she had. LLPD OFFICER stopped the vehicle, began reapplying the handcuffs, and found a small clear bag containing a crystal-like substance, which field tested positive for the properties of methamphetamine. In the report, LLPD OFFICER wrote that they checked the back seat of LLPD OFFICER's vehicle before every shift and there was no contraband in LLPD OFFICER's vehicle at the start of that shift. SPARKS was the first person in LLPD OFFICER's vehicle on that day.

33. Criminal history records list SPARKS as guilty of Use or Possession of Drug Paraphernalia and DWI, with a sentence of 11 months and 29 days probation following LLPD's arrest on May 28, 2015.

B. SPARKS' Call to the FBI National Threat Operations Center (NTOC)

34. On August 15, 2024, I reviewed an approximately nine-minute recording of a call made by SPARKS to the FBI NTOC on May 26, 2024. SPARKS identified herself by first and last name, and date of birth. I recognized SPARKS voice because I am familiar with her voice from my interaction with SPARKS. SPARKS called to report "three subjects" from a "cold case" regarding the West Memphis Three Documentary. SPARKS told the intake examiner that SPARKS did not know the identities of the three subjects. SPARKS told the threat intake examiner that SPARKS "got sober enough to realize", and "I learned to self-medicate, way long time ago. I mean I was self-medicating, but not medicating." The threat intake examiner requested SPARKS to clarify several statements during the call, and SPARKS terminated the call with the examiner.

**FEDERAL OFFENSE CONDUCT**

A. Albuquerque Police Department (APD) March Arrest of SPARKS

35. I reviewed an APD Offense/Incident Report dated March 15, 2024. According to the report, a truck driven by SPARKS collided into an Albuquerque Fire and Rescue team fire truck. An APD officer observed the odor of alcohol on SPARKS' breath and slurred speech. SPARKS told the APD officer that she drank a "pony," which is slang for a shot of alcohol. The APD officer observed multiple indicators of intoxication and arrested SPARKS for driving under the influence. The vehicle was searched and towed, and APD found a revolver in the cup holder of the center console, which was loaded and in full reach of SPARKS, three open bottles of alcohol in her glove compartment, and a pipe described in the report as a "narcotics pipe" on SPARKS' person. The revolver was a silver Colt .38 caliber Detective Special revolver with a wooden handle and serial number H52039, often referred to as a ".38 Special" or a "snub-nose revolver." APD found five rounds and one casing with the revolver. SPARKS was charged with driving under the influence, negligent use of a firearm, open container and possession of drug paraphernalia, and transported and booked into the Metropolitan Detention Center, in Albuquerque, New Mexico.

36. Therefore, I have probable cause to believe that SPARKS is an unlawful user of controlled substances and was in possession of a firearm in Bernalillo County on March 15, 2024.

B. New Mexico State Police (NMSP) arrest of SPARKS on May 27, 2024

37. I reviewed an NMSP Offense/Incident Report which documented the arrest of SPARKS on May 27, 2024. According to the report, a NMSP officer (NMSP OFFICER) was flagged down by a driver in Rio Arriba County, New Mexico, who wanted to report a possible intoxicated driver. NMSP OFFICER located a vehicle which matched the description provided by the driver and observed the vehicle driving below the posted speed limit and

crossing over the marked road lines. The vehicle was a 2012 Blue Nissan Juke, VIN JN8AF5MR7CT102878 (that is, the **SUBJECT VEHICLE**), registered to SPARKS. While NMSP OFFICER approached the **SUBJECT VEHICLE**, SPARKS partially got out of the **SUBJECT VEHICLE** and placed something on the roof. NMSP OFFICER told SPARKS to get back in the **SUBJECT VEHICLE**. SPARKS told NMSP OFFICER that she was trying to assist NMSP OFFICER by placing her driver's license on the roof of the **SUBJECT VEHICLE**. SPARKS was unable to locate the paperwork inside the **SUBJECT VEHICLE** and was unable to maintain her focus on what NMSP OFFICER asked. MINOR was in the **SUBJECT VEHICLE**. SPARKS told NMSP OFFICER that SPARKS was coming from Colorado. SPARKS denied having consumed any alcoholic beverages. NMSP OFFICER observed SPARKS had bloodshot/watery eyes and slurred speech. NMSP OFFICER placed SPARKS into investigative detention to determine if SPARKS' **SUBJECT VEHICLE** had an Interlock Device, which it did not.

38. NMSP OFFICER asked SPARKS if there was anything SPARKS would like to take with her to the Rio Arriba Detention Center. SPARKS and MINOR spoke in unison about the cash, phones, and a bag in the backseat, and SPARKS mentioned her makeup bag. NMSP officer found a backpack, a purse and some smaller bags. After moving one of the bags, NMSP OFFICER located a blue pill with the markings "M30" underneath the bag, which NMSP OFFICER recognized to be consistent with the drug narcotic Fentanyl.

39. NMSP OFFICER set the bag back down in the **SUBJECT VEHICLE** and rolled up the windows. The **SUBJECT VEHICLE** was sealed and dated May 27, 2024. A towing company towed the **SUBJECT VEHICLE** to the New Mexico State Police Office in Espanola, NM.

40. NMSP OFFICER transported SPARKS to the NMSP Office in Espanola. While NMSP OFFICER escorted SPARKS to the holding area, SPARKS still slurred her

speech, had bloodshot/watery eyes, and a faint odor of alcoholic beverage emitting from her facial area. NMSP OFFICER read SPARKS her Miranda Warning in which SPARKS agreed to speak with NMSP OFFICER. SPARKS said the blue pill found in the **SUBJECT VEHICLE** was Fentanyl. SPARKS stated she had a pocketful of Fentanyl that SPARKS had been using over the last few days. SPARKS told NMSP OFFICER that the one in the backseat must have fallen out of SPARKS' pocket when SPARKS was sitting in the back seat while a friend drove the car. SPARKS told NMSP OFFICER that SPARKS used narcotics in the past and was a heavy user. SPARKS said she had since become sober.

41. On May 29, 2024, NMSP conducted a search of SPARKS' **SUBJECT VEHICLE** pursuant to a State of New Mexico Search Warrant. NMSP found one box of .38 special ammunition, one box of 12 gauge shotgun shells, two hatchets, one throwing knife, a machete, three pocket knives, one cell phone, two glass pipes, five empty labeled Marijuana containers, three small containers with a wax-like substance, one small container of a loose, green leafy substance, one labeled bag of loose Marijuana, two medium containers of labelled Marijuana, one container of labeled Marijuana Resin, two vape cartridges and one pre-rolled Marijuana cigarette. Photographs also showed the brand of the .38 special ammunition as Blazer, with the casing stamped with "CCI". The shotgun shells were labeled Super X, in a box labeled Winchester Super X 12 Gauge, 2 ¾ inches, 1290 velocity, 1 oz., 8 shot.

**<u>INTERSTATE NEXUS</u>**

42. On June 17, 2024, I reviewed Bureau of Alcohol, Tobacco and Firearms Records which showed the Colt Revolver serial Number H52039, which was possessed by SPARKS and seized on March 15, 2024, was originally purchased on November 1, 1975 from an identified store in Warsaw, Indiana. Therefore, the revolver traveled in interstate commerce before arriving in New Mexico.

43. On July 10, 2024, an identified representative from CCi Ammunition reviewed a photo of the Blazer .38 special ammunition seized from SPARKS by NMSP on May 27, 2024 and confirmed that CCi Ammunition manufactured the ammunition in Lewiston, Idaho.

44. On July 11, 2024, a representative from Winchester Customer Support confirmed that Winchester Super X 12 Gauge, 2 ¾ inches, 1290 velocity, 1 oz., 8 shot shells are manufactured in East Alton, Illinois.

**FBI ARREST OF SPARKS**

45. On July 18, 2024, FBI Albuquerque arrested SPARKS based on a complaint and arrest warrant in case number MJ 24-1029 KBM, issued by the Honorable Karen Molzen, U.S. Magistrate Judge, in the District of New Mexico on July 13, 2024, for violating two counts of 18 U.S.C. § 922(g)(3).

**LOCATION OF AMMUNITION FROM THE NMSP MAY 27, 2024 ARREST OF SPARKS**

46. On August 1, 2024, a NMSP Sergeant informed me that the .38 special ammunition and 12 gauge shotgun shells documented as seized in the NMSP report from the May 27, 2024 arrest were placed back in SPARKS' **SUBJECT VEHICLE**. NMSP OFFICER emailed me contact information for the tow company which towed the **SUBJECT VEHICLE**. The same day, I called the tow company and spoke with the owner of the company (OWNER). The OWNER still had a 2012 Blue Nissan Juke, VIN JN8AF5MR7CT102878 which the OWNER towed at the request of the NMSP. The **SUBJECT VEHICLE** was located at the OWNER's lot at 18565 US 84 285, Espanola, New Mexico 87532. The owner was in the process of obtaining ownership of the vehicle and in the process of transferring the title to the OWNER. On August 1, 2024, the OWNER observed a box of shotgun shells in the **SUBJECT VEHICLE**.

**CONCLUSION**

47. Based on the foregoing, I have probable cause to believe that SPARKS violated the federal criminal statute cited herein, and that the evidence of these offenses, more fully described in Attachment B of this Application, are located in the **SUBJECT VEHICLE** located at 18565 US 84 285, Espanola, New Mexico 87532, described further in Attachment A of this Application. I therefore respectfully request that this Court issue a search warrant for **SUBJECT VEHICLE**, as described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

48. Special Assistant United States Attorney Jonathan Gardner has reviewed and approved this application.

49. I swear that this information is true and correct to the best of my knowledge.

Respectfully submitted,

FRANKLIN MOSCA
Special Agent
Federal Bureau of Investigation

Subscribed electronically and sworn to me telephonically on

August 22, 2024:

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The property to be searched is a Blue 2012 Nissan Juke, Vehicle Identification Number (VIN) JN8AF5MR7CT102878, registered owner Courtney Sparks, and physically located at 18565 US 84 285, Espanola, New Mexico 87532, and depicted in the pictures below.










.

**ATTACHMENT B**

PROPERTY TO BE SEIZED

The items, information, and evidence relating to violations of 18 U.S.C. § 922(g)(3) committed by Courtney Sparks as described in the search warrant affidavit, including, but not limited to:

a. Ammunition, including but not limited to:

   a. Blazer .38 special ammunition, with the casings stamped with “CCI”; and

   b. Winchester 12 Gauge shotgun shells.